IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH TRASK,

                              Plaintiff,

        v.

E.B. ABANICO, et al.,

                              Defendant.

NO. CV 08-1695 TEH

ORDER DENYING
PLAINTIFF'S MOTION FOR
LEAVE TO AMEND;
GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS

        This matter came before the Court on November 10, 2010, on a motion to dismiss filed by Defendants E.B. Abanico ("Abanico"), E. Ivey ("Ivey") and J. Soares ("Soares"). Plaintiff Kenneth Trask ("Trask"), filed a motion for leave to file a second amended complaint on December 23, 2010.  For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Plaintiff's motion is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

        Plaintiff is an inmate currently housed at the California Men's Colony within the California Department of Corrections and Rehabilitation ("CDCR") and has filed a pro se civil rights complaint under 42 U.S.C. § 1983 for actions taken by correctional officers Abanico, Ivey, and Soares while Plaintiff was incarcerated at the California Correctional Training Facility ("CTF").

        Plaintiff alleges that on June 28, 2007, as he made his way to the central prison infirmary for scheduled treatment, he was "stopped and acosted [sic]" by Abanico, who informed Plaintiff that he would not allow him to proceed.  Docket No. 23-1.  Plaintiff was unable to receive treatment until the next evening.  *Id.*  Plaintiff then filed an administrative

**United States District Court**
For the Northern District of California

1   complaint in response to Abanico's action.  During the course of the investigation into the

2   allegation, Plaintiff claims that Ivey and Soares forged his signature so as to withdraw the

3   complaint.  *Id*.

4          Plaintiff also alleges Abanico filed a Rules Violation Report ("RVR") against him,

5   accusing Plaintiff of threatening to kill Abanico in retaliation for use of the inmate appeals

6   system.  Doc. No. 23-1 at 6.  On September 13, 2007, Abanico released Trask to go to a

7   Ramadan meal service.  Doc. No. 1 at 33.  After being released, Trask waited near Abanico

8   for a fellow inmate who was trying to go to the same dinner.  *Id*.  That inmate was not on the

9   list, and Abanico instructed that inmate to return to his wing of the facility.  *Id*.  Trask told

10  his fellow inmate that he was going to talk to Abanico's supervisor.  *Id*.  Abanico claims that

11  Trask then pointed towards him and said he was going to "kill" Abanico.  Doc. No. 1 at 7;

12  33.  Following the filing of Abanico's RVR, Plaintiff was removed from the general inmate

13  population and placed in administrative segregation for eight months, where he was isolated

14  from others, denied his legal papers, as well as any paper or writing implements.  Doc. No.

15  35 at 18-19.

16         On November 10, 2010, Defendants filed a motion to dismiss Plaintiff's claims of

17  retaliation under the First Amendment, and deliberate indifference to serious medical needs

18  under the Eight Amendment, for failure to state a claim upon which relief can be granted.

19  Trask opposes, and filed a motion for leave to file a second amended complaint on December

20  23, 2010.

21

22                                    **LEGAL STANDARD**

23         Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

24  plaintiff's allegations fail "to state a claim upon which relief can be granted. "In ruling on a

25  motion to dismiss, the Court must "accept all material allegations of fact as true and construe

26  the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*,

27  487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a

28

2

United States District Court

For the Northern District of California

1   legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. –, 129 S. Ct.

2   1937, 1949-50 (2009).

3        A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or

4   the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

5   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff

6   must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

7   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but

8   it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129

9   S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that

10  allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with

12  leave to amend unless it is clear that amendment could not possibly cure the complaint's

13  deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

14       A pro se pleading must be liberally construed, and "however inartfully pleaded, must

15  be held to less stringent standards than formal pleadings drafted by lawyers." *Bell Atlantic*

16  *Corp.*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Review is

17  limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754

18  (9th Cir. 1994), including documents physically attached to the complaint or documents the

19  complaint necessarily relies on and whose authenticity is not contested.  *Lee v. City of Los*

20  *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

21

22                                    **DISCUSSION**

23       Defendants Ivey and Soares move to dismiss the First Amendment claim of retaliation

24  alleged against them for failure to exhaust available administrative remedies under 42 U.S.C.

25  § 1997e(a).  Defendant Abanico moves to dismiss the First and Eighth Amendment claims

26  alleged against him under Federal Rule of Procedure 12(b)(6) for failure to state a claim upon

27  which relief may be granted.  Defendants add that, assuming they violated Plaintiff's rights,

28

they are entitled to qualified immunity.  Plaintiff seeks leave of court to file a second amended complaint.  Defendants oppose Plaintiff's request.

**I. Leave to Amend**

A plaintiff generally may amend his complaint once as a matter of course within 21 days after the service of a motion filed under Federal Rule of Civil Procedure 12(b).  Fed. R. Civ. P. 15(a)(1)(B).  A party may also amend its pleading with the court's leave, which should be given freely "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  When granting leave to amend, courts in this circuit consider bad faith, undue delay, any prejudice to the opposing party, the futility of further amendment, and whether the plaintiff has previously amended his or her complaint. *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (citation and internal quotation omitted).  However, discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Id.*

On September 9, 2010, the Court granted, Doc. No. 25, Plaintiff leave to amend his original complaint, Doc. No. 23-1.  Plaintiff now seeks leave to file a second amended complaint, Doc. No. 30, because the first amended complaint was merely a "rough draft" and "only tentatively submitted in good faith."  Doc. No. 35 at 9.  Trask argues that his most recent "first amended complaint," filed on November 3, 2010, should be treated as the operative complaint because he was "unaware that [Ivey and Soares] would be ordered served when he first amended his complaint."  Plaintiff believes his first amended complaint is deficient because it "did not fully address <u>all</u> Defendants [sic] this Court ordered served, and that these Defendants E. Ivey and J. Soarces [sic] were not properly set forth..." *Id.* (emphasis in original).  Trask argues that only after filing his first amended complaint did he become "aware of which Defendants [sic] would be ordered served in this lawsuit." *Id.* at 12.  However, in his first amended complaint, Trask clearly identifies Ivey and Soares as defendants, and offers conclusory statements regarding their alleged conspiracy to forge Plaintiff's signature.  Doc. No. 23-1 at 7-8.  Furthermore, the Court ordered service on Ivey and Soares because Plaintiff originally named them as Defendants in his original complaint.

4

United States District Court

For the Northern District of California

1   Doc No. 1 at 6, 8.  Accordingly, Plaintiff's Motion for Leave to Amend to File a Second

2   Amended Complaint (Doc. No. 35) is DENIED at present, and the first amended complaint

3   remains the operative complaint.  (This is not to say Plaintiff is barred from filing any further

4   amendments to his moving papers–as discussed below, Plaintiff will have leave to make

5   some specified amendments to his filings.)

6   **II.  Failure to Exhaust Administrative Remedies**

7          Defendants Ivey and Soares move to dismiss the First Amendment retaliation claim

8   against them for failure to exhaust available administrative remedies under 42 U.S.C. §

9   1997e(a).  Doc. No. 32 at 14-16.  The Prison Litigation Reform Act of 1995 ("PLRA")

10  amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to

11  prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined

12  in any jail, prison, or other correctional facility until such administrative remedies as are

13  available are exhausted."  42 U.S.C. § 1997e(a).  Under the PLRA, all available

14  administrative remedies must be exhausted and such remedies "need not meet federal

15  standards, nor must they be 'plain, speedy[] and effective.'"  *Id*. (citing *Booth v. Churner*,

16  532 U.S. 731, 739 (2001)).  The PLRA's exhaustion requirement requires "proper

17  exhaustion" of available administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

18  Procedural exhaustion is now required "regardless of the fit between a prisoner's prayer for

19  relief and the administrative remedies possible."  *Booth*, 532 U.S. at 739.  Broadly stated, the

20  purpose of the PLRA exhaustion requirement is to "afford[] corrections officials time and

21  opportunity to address complaints internally before allowing the initiation of a federal case."

22  *Porter*, 534 U.S. at 525.

23          California provides its prisoners the right to appeal administratively "any

24  departmental decision, action, condition or policy perceived by those individuals as adversely

25  affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  To exhaust available

26  administrative remedies within this system, "a prisoner must proceed through several levels

27  of appeal:  (1) informal resolution; (2) formal written appeal on a [CDCR] 602 inmate appeal

28  form; (3) second level appeal to the institution head or designee and (4) third level appeal to

the director of the [CDCR]." *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997); Cal. Code Regs. tit. 15, § 3084.5.

The first level of appeal, or informal resolution, is bypassed when the prisoner complains of alleged misconduct by a departmental peace officer. Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G). The second level of appeal "shall be completed prior to the appellant filing at the third formal level." *Id*. at § 3084.5(c). A final decision from the director's level of review satisfies the exhaustion requirement under § 1997e(a). *Id*. at § 3084.1(a).

Failure to exhaust under § 1997e(a) is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). A defendant has the burden of raising and proving the absence of exhaustion in an unenumerated 12(b) motion. *Id*. at 1119–20. If the court concludes a prisoner has not exhausted administrative remedies, the proper remedy is dismissal of the claim without prejudice. *Id*. at 1120.

The record shows that on September 12, 2007 Plaintiff filed a CDCR Inmate Appeal 602 form (unnumbered CTF Appeal) complaining that Ivey and Soares were responsible for forging Plaintiff's signature on a form that authorized the withdrawal of an earlier grievance Plaintiff had filed against Abanico. Doc. No. 35 at 36-37. The record also shows that on September 17, 2007, Plaintiff's initial grievance against Ivey and Soares was screened out and discarded at the informal resolution level of review. *Id*. A letter from Appeals Coordinators Aboytes and Dennis accompanied the screened out appeal. *Id*. at 39. Addressing the disposition of the unnumbered CTF Appeal, the letter stated that "The enclosed documents are being returned to you for the following reasons: *In accordance with your request, the attached appeal has been withdrawn*." *Id*. (emphasis in original).

Defendants submit evidence showing that Plaintiff failed to file any other grievances through the prison administrative system challenging Ivey's or Soares's conduct. Doc. No. 33 at 1, 3 (Declaration of D. Foston, Chief of Inmate Appeals Branch, whose review of Plaintiff's appeals filed from 2007-2008 demonstrated Plaintiff failed to exhaust at the director's level of review any appeal against Ivey or Soares related to retaliation or forgery).

Plaintiff does not point to any evidence that he received further review of the forgery claim against Ivey and Soares following the Coordinator's letter.  Doc. No. 35.  Rather, the record shows – and Plaintiff admits – that he proceeded through only the informal resolution level of review, at which point his unnumbered CTF Appeal was screened out.  Doc. No. 35 at 39.  In fact, Plaintiff, in his opposition to Defendants' Motion to Dismiss states he "need not file a separate grievance against [Ivey and Soares] who are not the primary source of the constitutional violation . . . . [¶]  These Defendants['] actions in this case only support the allegation [of First Amendment retaliation] made directly against Defendant Abanico."  Doc. No. 35 at 15.

Given Plaintiff's concession, the evidence Defendants submit and the Court's careful independent review of the record, the Court finds Plaintiff failed to exhaust all administrative remedies regarding Ivey's and Soares's conduct.  Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Ivey and Soares for failure to exhaust administrative remedies is GRANTED.  Plaintiff may file an amended complaint after all administrative remedies have been exhausted.

### III.  Eighth Amendment Claim

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds), *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).  A determination of "deliberate indifference" involves an examination of two elements:  the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or

United States District Court

For the Northern District of California

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment. *McGuckin*, 974 F.2d at 1059–60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Delay of, or interference with, medical treatment can amount to deliberate indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where the prisoner is alleging that delay of medical treatment amounts to deliberate indifference, however, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. Of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Plaintiff alleges that Defendant Abanico was deliberately indifferent to his serious medical needs by preventing him from attending a regularly-scheduled doctor's appointment. Doc. No. 23-1 at 8. Defendant Abanico moves to dismiss Plaintiff's First and Eighth Amendment claims against him under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff's Eighth Amendment claim arises out of an encounter with Abanico on June 28, 2007. Doc. No. 23-1 at 8. On that day, Plaintiff had a scheduled appointment at 5:30pm for a doctor's visit regarding his high blood pressure. Doc. No. 35 at 25; Doc. No. 1 at 23. Plaintiff did not leave for his regularly-scheduled 5:30 p.m. appointment until 5:45 p.m.

8

United States District Court

For the Northern District of California

Doc. No. 1 at 23.  On his way, Defendant Abanico stopped him and asked for his I.D. and his pass.  *Id.*  Plaintiff told Abanico he was headed to the infirmary for his regularly-scheduled medical appointment, and showed him medical authorization.  *Id.*  Abanico informed Plaintiff that he would not be allowed to proceed to the infirmary at that time.  *Id.*

Approximately 30 minutes after Abanico stopped Plaintiff, he was allowed to visit the infirmary.  *Id.*  On his way there, Plaintiff stopped to discuss Abanico's earlier actions with Abanico's supervising officer, Sergeant Prudell ("Prudell").  *Id.*  By the time the conversation between Prudell and Plaintiff concluded, the infirmary had closed for the night. *Id.* at 24.  According to Plaintiff, an unidentified infirmary staff member instructed Plaintiff to return the following day.  *Id.*

Here, Plaintiff simply does not proffer "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp.*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1949. Specifically, Plaintiff has failed to set forth sufficient facts to establish that Abanico's interference with Plaintiff's access to treatment on June 28, 2007 rose to the level of deliberate indifference to his serious medical needs.  *See McGuckin*, 974 F.2d at 1059.

The Court notes that the initial 15 minute delay was caused by Plaintiff's failure to leave in a timely fashion to make his regularly-scheduled appointment.  Moreover, only 30 minutes elapsed between when Plaintiff first attempted to attend his medical appointment and the time he ultimately was allowed to do so.  When Plaintiff was permitted to leave for his appointment, he decided to stop and talk to Abanico's supervisor rather than proceeding directly to the infirmary, further delaying his treatment by his own actions.  Plaintiff has failed to allege sufficient facts to establish that he suffered additional harms from the delay. *Hallett*, 296 F.3d at 744.

While the Court finds, on facts alleged by the Plaintiff, that Abanico stopped Plaintiff from proceeding to the infirmary with no explanation provided to Trask, neither the record nor Plaintiff's complaint show that Abanico had any knowledge of Plaintiff's serious medical condition or that Albanico was deliberately indifferent to that knowledge.  *See Brennan*, 511 U.S. at 837.  Trask claims that, when he was denied treatment, he had a "known serious

United States District Court

For the Northern District of California

1  medical need." Doc. No. 23-1 at 6. However, this conclusory statement is not sufficient to

2  show that Abanico knew Trask faced a substantial risk of serious harm and that Abanico

3  disregarded that risk.

4     On this record, the Court cannot say that Defendant Abanico acted with deliberate

5  indifference to Plaintiff's serious medical needs. Defendants' Motion to Dismiss Plaintiff's

6  Eighth Amendment claim against Defendant Abanico is GRANTED with leave to amend to

7  the Plaintiff.

8  **IV. Retaliation Claim**

9     Within the prison context, a viable claim of First Amendment retaliation entails five

10  basic elements: (1) An assertion that a state actor took some adverse action against a

11  prisoner (2) because of that prisoner's conduct (3) which was protected, and that such action

12  (4) chilled the prisoner's exercise of his First Amendment rights (5) without reasonably

13  advancing a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th

14  Cir. 2005). The right of access to the courts extends to the exercise of established prison

15  grievance procedures, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), such that a

16  prisoner may not be retaliated against for using such procedures. *Rhodes*, 408 F.3d at 567;

17  *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

18     The prisoner must prove all elements of a viable retaliation claim, including the

19  absence of legitimate correctional goals for the conduct about which he complains. *Pratt v.*

20  *Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). In particular, courts should "'afford appropriate

21  deference and flexibility' to prison officials in the evaluation of proffered legitimate

22  penological reasons for conduct alleged to be retaliatory." *Id*. (quoting *Sandin*, 515 U.S. at

23  482).

24     The prisoner also must show that the constitutionally-protected activity in which he

25  was engaged was a substantial or motivating factor for the alleged retaliatory action. *See*

26  *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997) (inferring retaliatory motive from

27  circumstantial evidence). The prisoner need not prove a total chilling of his First

28  Amendment rights to state a claim for retaliation; that his First Amendment rights were

chilled, though not necessarily silenced, is enough.  *Rhodes*, 408 F.3d at 569.  But the prisoner at least must allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect.  *Id.* at 567–68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm).

Plaintiff alleges that Defendant Abanico retaliated against him in violation of the First Amendment by filing a false Rules Violation Report ("RVR") against him.  Doc. No. 23-1 at 6.  Plaintiff's claim of retaliation against Abanico arises out of a Rule Violation Report (RVR) Abanico filed regarding Plaintiff's actions during a Ramadan meal release.  According to the record before the Court, on September 13, 2007, Abanico released Plaintiff to go to a Ramadan dinner service.  Doc. No. 1 at 33.  After being released, Plaintiff waited near Abanico for a fellow inmate (Plaintiff's friend) who was trying to go to the same dinner service.  *Id.*  Plaintiff's friend was not on the list, and Abanico instructed Plaintiff's friend to return to his cell to await regular dinner service.  *Id.*  Plaintiff then told his friend he was going to talk to Abanico's supervisor and, pointing towards Abanico, told his friend he was going to "kill" Abanico.  *Id.*  Abanico then filed a Rules Violation Report against Plaintiff for "Threatening the Life of a Public Official."  *Id.* at 7.  According to Plaintiff, he did not threaten Abanico on September 13, 2007 during the meal service release.   Plaintiff contends that Abanico filed the RVR and removed Plaintiff to administrative housing in retaliation against Plaintiff for filing several administrative grievances against Abanico.  Doc. No. 30 at 4, 6-7.

For instance, on June 22, 2007, Plaintiff filed a grievance against Abanico for "continuous unprofessional conduct," which was logged as 07-02424.  Doc. No. 1 at 49; Doc. No. 23-1 at 8.  On August 7, 2007, Plaintiff filed an administrative grievance against Abanico after Plaintiff personally observed Abanico repeatedly taking dinner trays from the evening meal carts and later consuming the contents.  This grievance was logged as CTF 07–02089.  Doc. No. 1 at 63.

11

United States District Court

For the Northern District of California

On March 17, 2008, nearly six months after the September 13, 2007 incident that led Abanico to file the RVR against Plaintiff, the Senior Hearing Officer ("SHO") held a hearing to determine the validity of the facts in support of the RVR and the decision to detain Plaintiff in administrative segregation.  Doc. No. 30 at 48.  The SHO concluded that Plaintiff was not guilty of threatening Abanico's life because the "RVR, the statements of the [Investigative Employee], and the Original Incident report 837C, call to question the credibility of the statements provided by staff."  Doc. No. 30 at 48.

Viewing the record in a light most favorable to Plaintiff, Plaintiff has set out facts from which a court, making reasonable inferences from those facts, could conclude that Abanico retaliated against Plaintiff.  First, Abanico is a state agent, for he works at CTF as a correctional officer.  Second, given the number of complaints that Plaintiff has filed, particularly the number of complaints filed against Abanico, it is reasonable to conclude that Abanico submitted the RVR in response to the numerous complaints against him.  Third, the prisoner was engaged in protected conduct.  Under Cal. Code Regs. tit. 15, § 3084.1(a) (2009), "[a]ny inmate or parolee under the department's jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Fourth, while Plaintiff's rights were not completely silenced, they were chilled when Plaintiff was moved to administrative segregation without cause, thus restricting access to various activities and sending Plaintiff the message that additional complaints will lead to harsher punishments.  Finally, Abanico's actions did not advance a reasonable correctional goal.  The RVR was found to be without merit, and the SHO concluded that staff statements were inconsistent.  Additionally, Plaintiff contends that he did not provoke Abanico, for Plaintiff said nothing while waiting for his friend to be released for the Ramadan dinner service.  Since the facts are viewed in a light most favorable to Plaintiff, Abanico's actions were taken without cause.

Therefore, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Abanico is DENIED.

United States District Court

For the Northern District of California

## V. Qualified Immunity

Instead of presenting the qualified immunity defense in the context of a motion for summary judgment, Defendants have chosen to present their defense in the context of a motion to dismiss, where factual allegations are taken in a light most favorable to the nonmoving party.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *Id*.  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law'"; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  *Saucier*, 533 U.S. at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id*.

The analysis of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id*. In determining whether a right is clearly established, courts must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

13

United States District Court

For the Northern District of California

1   *Id.* If the law did not put the officer on notice that his conduct would be clearly unlawful,

2   summary judgment based on qualified immunity is appropriate. *Id.*

3       With regard to the second prong, if the law is determined to be clearly established, the

4   defendant bears the burden of establishing that his actions were reasonable, even if he

5   violated the plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d

6   1447, 1450 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995); *Maraziti*

7   *v. First Interstate Bank of California*, 953 F.2d 520, 523 (9th Cir. 1992).  The inquiry does

8   not focus on whether the person harmed by the conduct of the public official has a cause of

9   action, but on whether the official should know that his conduct would violate statutory or

10  constitutional rights. *Eng v. Cooley*, 552 F.3d 1062, 1068-69 n.2 (9th Cir. 2009).  It is not

11  necessary that a prior decision rule "the very action in question" unlawful for a right to be

12  clearly established.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Rather, "the contours

13  of the right must be sufficiently clear so that a reasonable official would know that his

14  conduct violates that right." *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995).

15      Because the Court must construe the facts in a light most favorable to Plaintiff,

16  Defendants are not entitled to prevail on a defense of qualified immunity.  First, Plaintiff has

17  asserted the violation of a clearly established right.  California provides its prisoners the right

18  to appeal administratively "any departmental decision, action, condition or policy perceived

19  by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, §

20  3084.1(a) (2009).  By filing an RVR that was later dismissed by the SHO and which, on

21  these facts, appears meritless, Abanico violated a clearly established right.

22      Second, a reasonable official could not believe that the actions taken by Abanico were

23  reasonable when the facts are viewed in a light most favorable to Plaintiff.  Plaintiff never

24  threatened Abanico.  Nevertheless, Abanico filed a RVR because Plaintiff previously filed

25  complaints against Abanico, and removed Plaintiff to administrative segregation for six

26  months.  A reasonable official would know that moving an inmate to administrative

27  segregation and filing a RVR without any cause would be a violation of an inmate's clearly

28  established rights.

United States District Court
For the Northern District of California

1    Therefore, Defendants' request for qualified immunity is DENIED.  However, while

2  Abanico is not entitled to qualified immunity at this procedural stage, the qualified immunity

3  defense may be raised and reassessed at a later time.

4  **VI. Conclusion**

5    For the foregoing reasons, Plaintiff's motion for leave to amend is DENIED, and

6  Plaintiff's first amended complaint shall be considered operative.

7    Defendants' motion to dismiss Plaintiff's First Amendment claim against Ivey and

8  Soares for failure to exhaust proper administrative remedies is GRANTED, with leave to

9  amend.  Defendant's motion to dismiss Plaintiff's Eighth Amendment claim against Abanico

10  for failure to state a claim is also GRANTED, with leave to amend.

11    Defendants' motion to dismiss Plaintiff's First Amendment claim for failure to state a

12  claim and request for a finding of qualified immunity are DENIED.  No later than sixty (60)

13  days from the date of this order, Defendant shall file a motion for summary judgment or shall

14  inform the Court he is of the opinion that such a motion is not warranted.  Any opposition to

15  the motion shall be filed no later than thirty (30) days from the date the motion is filed.

16

17  **IT IS SO ORDERED.**

18

19

20  Dated: 8/11/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27

28

15